## Van R. Blush v. The State of Kansas.
### No. 262.

1. **Illegitimate Child**—*Prosecution for Support.* A prosecution for the maintenance and support of an illegitimate child can only be maintained when the complainant, at the time of the commencement of the action, is an unmarried woman. (Gen. Stat. 1889, ¶ 3252.)

2. **Divorce**—*Effect of Decree.* Under paragraphs 4757 and 4759, General Statutes of 1889, a decree of divorcement does not become final, or operate as a dissolution of the marriage contract, until the expiration of six months from the date of the rendition thereof, and the parties thereto are not single or unmarried persons until such decree becomes final and absolute; and it is incumbent in an action of this kind, where the prosecuting witness claims to be unmarried by reason of a decree of divorce, for her to show by legal testimony that such decree had become final.

**Memorandum.**— Error from Shawnee district court; Z. T. Hazen, judge. Action by The State of Kansas against Van R. Blush to compel defendant to support an alleged illegitimate child. Judgment for plaintiff.

Defendant brings the case to this court.    Reversed. The opinion herein, filed September 9, 1896, states the material facts.

*David Overmyer*, for plaintiff in error.

*H. C. Safford*, county attorney, and *A. H. Case*, for defendant in error.

The opinion of the court was delivered by

GILKESON, P. J. :  This was an action brought in the name of The State of Kansas, as plaintiff, against Van R. Blush, as defendant, to compel him to make certain provisions for the support of an alleged illegitimate child, the paternity of which was imputed to him by the mother of said child, one Laura A. Hunt.   The prosecution was instituted before A. F. Chesney, a justice of the peace of the city of Topeka, on the 16th day of October, 1893.   There are several errors assigned.   We shall, however, consider only one, as upon it this case must be reversed.

Was Laura Hunt a single woman at the time she made this complaint?   Paragraph 3252, General Statutes of 1889, provides :  " When any unmarried woman who has been delivered of or is pregnant with a bastard child shall make a complaint.   .   .   ."   This section has been construed by the supreme court of this state to mean that, if the prosecuting witness was a single woman when she commences the prosecution, although she may have been married when the child was born, the proceeding may be prosecuted by the mother of such child.   (*Willetts v. Jeffries*, 5 Kan. 470.)

The evidence in this case shows that at the time the child was born she was a married woman.   Does not, then, the law presume, where it is once shown that a marriage relation exists, that it continues until

it is proven to the contrary?   We think so, and it is incumbent upon the state to prove every material fact and element necessary to constitute the offense before a conviction can be had.   One of the material facts of this case to be proven by the state was that Laura A. Hunt, at the time she made this complaint, on the 16th day of October, 1893, was a single woman.   The only testimony upon this proposition is that of the prosecutrix herself, in which she said that at the time of the birth she was a married woman, and then testified as follows :

Ques.   Whom had you married?   Ans.   W. A. Hunt.

Q.. At the time of the birth of the child, how long had you been married to him?   A.   From the 19th of October to the 9th of May the same year.

Q.   19th of October?   Is that correct?   A.   1892.

Q.   The child was born March 9, 1892?   A.   Yes, sir ; I was married in 1891.

Q.   You were married in October before that?   A. The 19th of October, 1891.

Q.   Prior to that date had you been married?   A. No, sir.

Q.   Had you ever been married prior to the time you married Hunt?   A.   Yes, sir ; my first husband was dead.

Q.   What had become of your first husband?   A.   He was dead.

Q.   When did he die?   A.   He died in October.

Q.   What year?   A.   Two years before that ; I cannot call the year.

Q.   Two years before you married Hunt?   A.   Yes, sir.

Q.   On the 16th day of October last, and now state whether you were a married woman or single.   A. Single.

Upon cross-examination she stated :

Q.   You say the child was born on what day of the month?   A.   9th of March, 1892.

Blush v. The State.

Q. You say at that time you were married to Hunt?
A. Yes, sir.

Q. Got married October before? A. Yes, sir; but I did not live with him.

Q. But you had been married to him the October before? A. I did not live with him at all.

Q. You were married to him? A. Yes, sir.

Q. You have so stated, I believe? A. Yes, sir.

Q. Then you stated that in last October, when you brought this action, you was a single woman? A. Yes, sir.

Q. How did that come? A. I obtained a divorce from Mr. Hunt.

Q. Where? A. In this court.

Q. You obtained a divorce in October last? A. Yes, sir.

Q. Do you remember the day in October it was granted? A. No, sir, I do not exactly.

Q. The 15th? A. I do not remember the date.

Q. What is your best impression as to the date? I see this was filed October 16. A. I think it was near that.

Q. It was about there, was it, before you filed this, that you got your divorce here? A. Yes, sir, a few days, I suppose; I cannot state just exactly.

Q. What is your best recollection? A. I will tell you as near as I know. I cannot tell you. I know I got the divorce somewhere near the middle of October.

Q. That is, you got your divorce? A. Yes, sir.

Q. You know it was in the month of October? A. Yes, sir.

Paragraph 4757 (being section 647 of the code) reads as follows:

"A divorce granted at the instance of one party shall operate as a dissolution of the marriage contract as to both, and shall be a bar to any claim of the party for whose fault it was granted in or to the property of the other, except in cases where actual fraud shall have been committed by, or on behalf of, the success-

ful party. Every judgment of divorcement granted by a district court shall be final and conclusive, unless appealed from within the time and in the manner herein provided. A party desiring to appeal from a judgment granting a divorce must, within 10 days after such judgment is rendered, file a written notice in the office of the clerk of such court, duly entitled in such action, stating that it is the intention of such party to appeal from such judgment; and unless such notice be filed, no appeal shall be had or taken in such cause; if notice be filed as aforesaid, the party filing the same may commence a proceeding in error for the reversal or modification of such judgment at any time within four months from the date of the decree appealed from, and not thereafter; but whether a notice be filed as herein provided, or not, or whether proceedings in error be commenced as herein provided, or not, it shall be unlawful for either party to such divorce suit to marry any other person within six months from the date of the decree of divorcement; and if notice be filed, and proceedings in error be commenced as hereinbefore provided, then it shall be unlawful for either party to such cause to marry any other person until the expiration of 30 days from the day on which final judgment shall be rendered by the appellate court on such appeal; and every person marrying contrary to the provisions of this section shall be deemed guilty of bigamy, and such marriage shall be absolutely void.''

Paragraph 4759 (§ 647b, Code) provides:

''Every decree of divorce shall recite the day and date when the judgment was rendered in the cause, and that the decree does not become absolute and take effect until the expiration of six months from said time.''

Conceding that her testimony was sufficient to establish the fact that she had obtained a decree of divorce, it is clearly shown by the testimony that, within two or three days after it was granted, she

commenced this action. She says that she was divorced in the middle of October. Now, giving all the latitude that is possible to be given to what is meant by the term, "about the middle of October," it would only include a range from the 10th to the 20th of the month. Either of these dates would constitute the middle of the month. But it must, from her testimony, have been prior to the 16th, and at the utmost limit not over six days before she instituted this action. But did the mere decree of divorce make her a single woman? We think not. Our statute expressly declares that the decree does not become absolute or take effect until the expiration of six months from the date of its rendition. It not only makes it unlawful for the parties to marry during that time, but declares that a marriage so contracted shall be absolutely void. During that six months, therefore, neither party to the decree of divorce is an unmarried person.

As we have said, neither of them could contract marriage within that time, and if either did the marriage would be void, and in the eye of the law they are still married. The decree is not absolute at the time of its rendition. It is merely a decree *nisi*, subject to the future order of the court, and to be affected by contingencies that might arise within the six months. And it has been held by courts of high reputation, that until the decree is absolute the marriage is in full force. (5 Am. & Eng. Encyc. of Law, 838; *Wales v. Wales*, 119 Mass. 89.)

And the supreme court of this state (*Wilhite v. Wilhite*, 41 Kan. 154) has adopted this doctrine, and held in that case, in construing the Oregon statute, (which provides : " A decree declaring a marriage void shall have the effect to terminate such marriage as to both parties, except that neither party shall be capable of contract-

ing marriage with a third person, and, if he or she does so contract, shall be liable therefor, as if such decree had not been given, until the suit has been heard and determined on appeal, and if no appeal be taken, the expiration of the period allowed by this code to take such appeal,") that under that law a decree of divorce does not absolutely terminate the marriage relation, nor entirely free the parties from its obligation and liability, until the expiration of the time allowed in which to take appeal. The same construction had been given to a similar statute in the then territory of Washington, in the case of *Smith v. Fife*, 30 Pac. Rep. 1059. This court, in passing upon a similar question (*Conn v. Conn*, 2 Kan. App. 419), held that a marriage contracted within six months, under the law of marriage and divorce as it stood in 1881, was valid, but placed it upon the ground that the code of 1881, unlike the statutes of Oregon and Washington, simply declared that it should be unlawful for either party to marry within six months after the decree, and did not make the parties incapable of contracting, nor declare a marriage so solemnized void; and Judge CLARK, in rendering the decision of the court in that case, makes this distinction very clear, and very plainly intimates that, if the law governing that case had contained the provisions which it now contains, the decision would have been different. In speaking of the construction given to the statute of 1881, he says:

" This construction seems to be in accord with the views of the legislature, when, in 1889, the law was amended so as to make absolutely void a marriage by either party to a divorce suit before the expiration of six months from the rendition of the decree and during the pendency of proceedings in error."

We think that the prosecuting witness at the time of the commencement of this prosecution was undoubtedly a married woman. This being the case, she cannot maintain the prosecution, and upon her own showing she had simply obtained a decree which had not become absolute — had not yet taken effect. It is contended by counsel for the defendant in error that this decree of divorce, and in fact every decree of divorce, becomes final within 10 days after its rendition, under that portion of the section which reads: "Every judgment of divorcement granted by a district court shall be final and conclusive, unless appealed from within the time and in the manner herein provided." The time and manner provided is filing a notice within 10 days after such judgment. We cannot agree with them upon this construction of the statute, and, even if we did, the state failed to prove in this case that the 10 days had expired. And, as we have said, giving the greatest latitude that could possibly be given, the decree had not been entered over six days prior to the filing of this complaint, so that, under their contention, the decree was not final.

We think, for the reasons given, the judgment in this case should be reversed, and the cause remanded, with instructions to dismiss the prosecution and discharge the defendant.

All the Judges concurring.