[Argued October 20; decided November 8, 1897.]

## McLENNAN *v.* McLENNAN.

( 50 Pac. 802 ; 38 L. R. A. 863.)

DIVORCE— CONFLICT OF LAW.— A marriage contracted in another state by a resident of Oregon who has been divorced in this state by a decree from which there is yet time to take an appeal is absolutely void under Hill's Ann. Laws, § 503, providing that a divorce decree shall terminate the marriage, "except that neither party shall be capable of contracting marriage with a third person" until the expiration of the period allowed for an appeal. *

From Multnomah: LOYAL B. STEARNS, Judge.

Appeal by plaintiff from a decree of the Circuit Court of Multnomah County in favor of defendant in a suit brought to obtain a decree to declare void a marriage which had been contracted in alleged con-, travention to the provisions of the statute.

REVERSED.

For appellant there was a brief and an oral argumen by *Mr. Stephen R. Harrington* to this effect:

A decree of divorce does not absolutely terminate the marriage relation, nor entirely free the parties from its obligation and liabilities until the expiration of the time allowed in which to take an appeal. A marriage before the expiration of six months from the rendition of the decree is absolutely void: *Conn*

* NOTE.— For a collection of authorities showing how the right to remarry is affected by a right to appeal from the divorce decree, see note to *Re Smith*, 17 L. R. A. 573. Generally, statutes forbidding the remarriage of parties guilty of adultery have no extraterritorial effect: See notes to *Phillips* v. *Madrid*, 12 L. R. A. 862 ; *Succession of Hernandez*, 24 L. R.- A. 831 ; *Ovitt* v. *Smith*, 35 L. R. A. 223 ; *Crawford* v. *State*, 35 L. R. A. 224. There is an extended discussion of this question in *Pennegar* ·v. *State*, 10 Am. St. Rep. 648 ( 2 L. R. A. 703 ).— REPORTER.

v. *Conn,* 2 Kan. App. 419; *Wilhite* v. *Wilhite,* 41 Kan.
154; *Re Smith,* 4 Wash. 702 (17 L. R. A. 573); 1
Bishop on Marriage, Divorce, and Separation, § 436;
2 Bishop on Marriage, Divorce, and Separation, § 1616;
Nelson on Divorce and Separation, §§ 135, 568, 582*a*;
*Thompson* v. *Thompson,* 114 Mass. 566; *Cook* v. *Cook,*
144 Mass. 163; *Pratt* v. *Pratt,* 157 Mass. 503 (21 L. R.
A. 97).

A decree of divorce fixes the status of the par-
ties — their "legal position in regard to the rest of
the community" — and that status cannot be confined
to the state in which the decree is rendered, but goes
with the parties to any state or country to which they
may temporarily or permanently remove: Nelson on
Divorce and Separation, §§ 27 *et seq.*

For the State of Oregon there was an oral argu-
ment by *Mr. Thad. S. Potter,* with a brief over the
names of *Cicero M. Idleman,* attorney-general, and
*Charles F. Lord,* district attorney, to this effect:

The decree of divorce terminates the marriage
relation: Hill's Ann. Laws, § 503.

The disqualification for marriage imposed by § 503,
Hill's Code, upon the parties to a suit for divorce, has
no extraterritorial effect: *Van Voorhis* v. *Brintnall,* 86
N. Y. 18 (40 Am. Rep. 505); *Thorp* v. *Thorp,* 90 N.
Y. 605 (43 Am. Rep. 189); *Commonwealth* v. *Lane,*
113 Mass. 458 (18 Am. Rep. 509); *West Cambridge* v.
*Lexington,* 1 Pick. 506 (11 Am. Dec. 231); *Putnam* v.
*Putnam,* 8 Pick. 433; *Medway* v. *Needham,* 16 Mass.
157 (8 Am. Dec. 131).

Mr. Justice Bean delivered the opinion.

On September 3, 1889, the plaintiff was divorced by the Circuit Court of Multnomah County from her then husband, and, in twenty-two days thereafter, while still a resident of and domiciled in this state, was married in Vancouver, Washington, to the present defendant, who was at the time also a resident and domiciled in Oregon. The plaintiff being advised that the latter marriage was premature and unlawful brought this suit to declare it void, which was decided adversely to her, and she brings the cause here by appeal. The sole question presented on the appeal is as to the validity of the Vancouver marriage, and its determination depends upon the construction of section 503 of our statute and its effect upon marriages solemnized in a neighboring state. By this section it is provided that "a decree declaring a marriage void or dissolved at the suit or claim of either party shall have the effect to terminate such marriage as to both parties, except that neither party shall be capable of contracting marriage with a third person, and if he or she does so contract, shall be liable therefor as if such decree had not been given, until the suit has been heard and determined on appeal, and if no appeal be taken, the expiration of the period allowed by this code to take such appeal." It is clear that a marriage in this state in violation of this section would be null and void, because by its provisions the parties are incapable of entering into such a relation within the time specified for the reason that the decree does not to that extent terminate the former marriage. The

statute, in effect, declares that such marriage shall, for that purpose, continue during the time in which an appeal may be taken from the decree, or, in case of an appeal, during the pendency thereof.    Until the expiration of such time, the status of the parties, so far as the right to remarry is concerned, remains the same as if no decree had been rendered.    For all other purposes the decree is full and complete, but, on grounds of public policy, the legislature has provided that pending an appeal from such decree,—if one be taken, and if not during the time in which it may be taken, —the parties shall be incapable of contracting marriage with a third person, and under this provision of the law neither of them has any more right to do so than if the decree had not been given.    During that time the decree is suspended or inoperative to that extent, and both parties, without regard to their guilt, are utterly powerless to make a valid contract of marriage with a third person.

It will be observed that the statute declares that neither party to the decree shall be capable of contracting marriage with a third person during the time such decree is subject to review by an appellate tribunal, and not merely that it shall not be unlawful for them to do so.    It goes directly to their ability or capacity to contract, and there is a distinction made in the books between the marriage of divorced parties declared by law incapable of remarrying and a marriage in violation of some statutory prohibition penal in its nature.    In the one case the marriage is absolutely void, and in the other it is often held to be valid, although the party may be punished criminally

for violating the prohibitory statute. This distinction
is very clearly pointed out by Judge CLARK in *Conn* v.
*Conn*, 2 Kan. App. 419 (42 Pac. 1006). The obvious
purpose and object of the statute is to enable either
party aggrieved by a decree of divorce to have the
same reviewed in an appellate court, and to that end
it is provided that, pending such right, neither party
shall be capable of doing an act which would render
a reversal nugatory. A construction of the statute
which would permit a marriage within the time lim-
ited would be not only contrary to its plain wording
and evident intent, but would produce, in case of a
reversal of the decree, the anomalous result of one
person having two legal husbands or wives, as the case
may be, at the same time, and polygamy be thus sanc-
tioned by law. It was to prevent the confusion and
uncertainty resulting from such a condition of affairs
that the statute was enacted, and it must be given force
and effect. The supreme court of the State of Kansas
had occasion in *Wilhite* v. *Wilhite*, 41 Kan. 154 (21
Pac. 173), to construe this statute, and it was there
held that a marriage contracted in this state within
six months after one of the parties had been divorced
from her former husband by a decree of one of the
courts of this state (Oregon), was absolutely null and
void. The opinion of Mr. Justice JOHNSTON in that
case contains a very lucid and satisfactory discussion
of this question. The same construction has been
given to a similar statute in the State of Washington
by the supreme court of that state: *In re Smith's Es-
tate*, 4 Wash. 702 (17 L. R. A. 573, 30 Pac. 1059).

Indeed, it is not seriously contended that a mar-

riage contracted in this state within the prohibited time would be valid, but the contention is that as the marriage in question was solemnized in the State of Washington the plaintiff was freed from the restraint imposed upon her by the decree of divorce. The general rule is unquestioned that a marriage between persons sui juris, valid where solemnized, is valid everywhere, but this plaintiff having been previously married, and her former husband being alive, could not contract a second valid marriage anywhere unless the incapacity arising from her previous marriage had been at the time effectively and completely removed by a decree of divorce, and this was not the case at the time of the solemnization of the marriage between plaintiff and defendant, because the statute under which the decree was obtained provided that the divorce did not completely sever the tie of marriage so as to enable either to become a party to a new one until the lapse of a specified time after the decree, and her marriage was contracted in violation of this statute. This provision of the law is an integral part of the decree by which alone both the parties to a divorce proceeding can be relieved from the incapacity to marry, and the marriage by a person divorced in this state and domiciled here, in violation of its provisions, is a mere nullity when called in question in the courts of this state, although such marriage may have been contracted in another state: 1 Nelson on Divorce, § 135; 1 Bishop on Marriage and Divorce, § 436; *Warter* v. *Warter*, 15 L. R. (Prob. Div.), 152; *Chichester* v. *Mure*, 3 Swab. & T. 223. The rule announced in the case of *Commonwealth* v. *Lane*,

113 Mass. 458 (18 Am. Rep. 509), and *Van Voorhis* v. *Brintnall*, 86 N. Y. 18 (40 Am. Rep. 505), and other cases cited of similar import, is relied upon by the defense. The doctrine of these cases is that a statute prohibiting a marriage of the guilty party in a divorce proceeding, during the lifetime of the other, or except under certain conditions, does not render void the marriage of such person out of the jurisdiction of the state in which the decree was obtained. Upon this question there is some conflict in the authorities [*Pennegar* v. *State*, 87 Tenn. 244 (2 L. R. A. 703, 10 Am. St. Rep. 648, 10 S. W. 305); 5 Am. & Eng. Enc. Law (1st ed.), 841], but the obvious distinction between the question presented in the cases referred to and in the case at bar is that there the incapacity to remarry attached only to the guilty party. The decree of divorce absolutely terminated the marriage relation between the parties as effectually as if it had been dissolved by death. The innocent party was perfectly free to remarry at any time, and the restraint upon the other was imposed as a punishment, and was, therefore, penal in its nature, and as such held inoperative out of the jurisdiction where it was inflicted. The provision of our statute is not imposed as a punishment, nor is it penal in its character, but it applies to the innocent as well as the guilty; it goes to the capacity of either party to remarry within the prescribed time, and therefore the cases cited and the doctrine contended for have no application to the question in hand. We are clear, therefore, that plaintiff's marriage, having been contracted before the expiration of the time allowed by law in which to appeal from a

decree of divorce, is absolutely void, and the decree of the court below must be reversed, and it is so ordered.

REVERSED.