# JUNE TERM, 1912.

*In re* CRANE.

CONTEMPTS — DIVORCE — MARRIAGE — STATUTES — DECREE FORBIDDING REMARRIAGE.

> For marrying again in a foreign jurisdiction within a month after a decree of divorce was entered forbidding the defendant husband from remarrying within two years, under 3 Comp. Laws, § 8658, said defendant was not punishable as for contempt of court; since his remarriage outside the State did not violate the statute. McALVAY and BROOKE, JJ., dissenting.

Habeas corpus by Elvin W. Crane. Submitted May 24, 1912. (Calendar No. 25,186.) Writ granted June 12, 1912.

*William V. Smith*, for petitioner.

*Guy W. Selby* and *Daniel Heins*, for respondent.

3 Comp. Laws, § 8658, reads as follows:

" The court granting a decree of divorce may provide in such decree that the party against whom any divorce is granted shall not marry again within such time as shall be fixed by the court, which time shall be set out in the decree: *Provided,* that such time shall not exceed the period of two years from the time such decree is granted. And in case any person shall marry contrary to the time set out in such decree said party shall be deemed to have committed the crime of bigamy and shall be subject to the pains and penalties therefor."

In the circuit court, in chancery, for the county of Genesee, Mich., January 29, 1912, one Allie Crane was

granted a decree of divorce from petitioner; the decree specifying that the defendant (petitioner here) should not remarry for a period of two years from and after the date of said decree. Less than one month thereafter petitioner was a party to a marriage ceremony performed at Windsor, Ontario, February 22, 1912, according to which ceremony he was married to one Anna Henniger by a clergyman licensed to celebrate marriages. Petitioner and said Anna Henniger returned to Flint, Mich., the former and present domicile of petitioner, where they have since lived as man and wife. Certain friends of the said court presented therein a petition advising the court that its decree had been thus disregarded and praying that petitioner be proceeded against as for a contempt.

Such proceedings were thereafter had that the court found and determined that the said acts and doings of petitioner were calculated to and did impair the respect due to the authority of the court, and tended to prejudice the court in the enforcement of its orders and decrees and to interfere with its rights and lessen its dignity, and that petitioner was guilty of contempt. He was sentenced and committed to the common jail of the county for a period of 30 days. Petitioner applied to the court for the writ of habeas corpus, which was allowed. The sheriff of the county of Genesee returns that he holds petitioner by virtue of an order of the said court, a copy of which is given.

The facts are not in dispute. The validity of the decree of divorce is not denied. The contention of petitioner is that, because the act of remarrying took place in a foreign jurisdiction, no contempt can be predicated thereon. The argument which is made is in substance that the statute provides an exclusive penalty for such a remarriage which can have no extraterritorial effect; that the Canadian marriage is valid in Canada and therefore is valid everywhere; that consequently petitioner is not guilty of bigamy, nor, in contracting a valid marriage, is he guilty of contempt. It is a further contention that the statute (1 Comp. Laws, § 1098), in which is recognized (if not con-

ferred) the power of a court to punish as for a criminal contempt "wilful disobedience of any process or order lawfully issued or made by it," does not include disobedience of a final decree of the court.   On the other hand, it is contended, not that the Canadian marriage is void, but that whether it is or is not a valid marriage the power of the court imposing the restriction upon petitioner to punish the wilful disobedience of its decree is clear and is a power inherent in the court.

OSTRANDER, J. (*after stating the facts*).   It is apparent that the power of the court to impose the restriction upon petitioner is derived from, and is in execution of, the statute.   The force and effect of the statute cannot be extended by the decree.   Therefore, if for any reason the action of petitioner was not in violation of the statute, neither was it in disregard of the decree.   I conceive that the case would be different if the court had the power, independent of statute, to impose the restriction.   Courts of equity not infrequently make decrees controlling the conduct of parties in any jurisdiction into which they may go.   In the instant case the decree is effective as the statute is effective and not otherwise.   I am of the opinion, therefore, that the conviction of petitioner cannot be sustained if his marriage is considered to be valid.

It is impossible, I think, to consider the disregard of the decree separate from the disobedience of the statute. Petitioner has not disregarded the decree if he has not also disobeyed the statute.   The court by virtue of the statute commanded the petitioner not to remarry.   The consequences of a remarriage are stated in the statute and are:

"In case any person shall marry contrary to the time set out in such decree said party shall be deemed to have committed the crime of bigamy and shall be subject to the pains and penalties therefor."

I conclude that, whether the Canadian marriage was valid or was invalid, the court had no jurisdiction to pun-

ish petitioner as for a criminal contempt. An order will be entered discharging petitioner from custody.

While I have found it unnecessary to determine the scope of the statute, it is not improper to direct attention to the fact that it seems to be penal in character; a fact which must be considered in any case in determining its effect. Statutes imposing restrictions upon the remarriage of divorced persons are not uncommon and in some jurisdictions are operative without the aid of an express restriction in the decree of divorce. Manifestly, if a statute is so drawn that prohibitions must be considered as applying only to marriages solemnized within the State, divorced persons may with impunity remarry in a foreign jurisdiction and return to and live in the State. On the other hand, if a statute is so drawn as to clearly disclose a State policy which regards as void all marriages in disregard of the statute restriction, wherever the marriages are celebrated, the courts must determine the rights of parties accordingly.

It was held in New York in *Van Voorhis* v. *Brintnall*, 86 N. Y. 18 (40 Am. Rep. 505), approved in *Thorp* v. *Thorp*, 90 N. Y. 602 (43 Am. Rep. 189), that a provision of the Revised Statutes prohibiting the second marriage of a person divorced on the ground of his or her adultery during the life of the former husband or wife, and declaring such marriage void, had no application, as they are in the nature of a penalty, and have no effect outside of the State in the absence of the express terms of the statute showing legislative intent to give them that effect. And in the case last referred to, in which a divorced person who was within the terms of the statute had remarried in another State and was applying for a divorce from the person he had so married, it was held that the fact that in remarrying he had disregarded the terms of the former decree of divorce was not ground for refusing him relief. The answer to the contention that he was in contempt was that neither the decree nor the statute which authorized it had any effect outside the jurisdiction of the State.

In Wisconsin the statute considered was:

"It shall not be lawful for any person divorced from the bonds of matrimony by any court of this State to marry again within one year from the date of the entry of such judgment or decree and the marriage of any divorced person solemnized within one year from the date of the entry of any such judgment or decree of divorce shall be null and void." Laws 1901, chap. 271, amended by Laws 1905, chap. 456.

In *Lanham* v. *Lanham*, 136 Wis. 360 (117 N. W. 787, 17 L. R. A. [N. S.] 804, 128 Am. St. Rep. 1085), the court considered the application of a widow to have support out of the estate of her alleged deceased husband. It appeared that she had been divorced in Wisconsin from a former husband and had within a month remarried in Michigan with the purpose of evading the Wisconsin law. It was held that the Michigan marriage was void, and in reaching this conclusion the court declared the statute was not a penal law and that the law was a declaration of the policy of the State to regard such marriages, wherever celebrated, as invalid in Wisconsin. Other cases to which reference may be made are *Pennegar* v. *State*, 87 Tenn. 244 (10 S. W. 305, 2 L. R. A. 703, 10 Am. St. Rep. 648); *McLennan* v. *McLennan*, 31 Or. 480 (50 Pac. 802, 38 L. R. A. 863, 65 Am. St. Rep. 835); *Estate of Stull*, 183 Pa. 625 (39 Atl. 16, 39 L. R. A. 539, 63 Am. St. Rep. 776); *Smith* v. *Fife*, 4 Wash. 702 (30 Pac. 1059, 17 L. R. A. 573); *State* v. *Shattuck*, 69 Vt. 403 (38 Atl. 81, 40 L. R. A. 428, 60 Am. St. Rep. 936). Also, see 14 Cyc. p. 729; 26 Cyc. p. 829.

STEERE and BIRD, JJ., concurred with OSTRANDER, J.

McALVAY, J. (*dissenting*), I cannot concur in the opinion of Mr. Justice OSTRANDER, which discharges petitioner from custody for a contempt of court committed purposely and probably under advice. In my opinion the decree prohibited absolutely the marriage of petitioner within a period of two years. The statute was intended by the

legislature declaratory of the policy of the State prohibiting the marriage of a divorced party anywhere. The statute in declaring a party who marries contrary to its provisions guilty of bigamy does not necessarily require a construction that such act will deprive the court of the inherent power to punish as for contempt a disobedience of its decree.

No authorities are cited that go to this extent. The legislature could not have intended such a result, and no rule of construction should obtain which necessarily deprives the courts of powers which have always been recognized.

In my opinion, this statute should receive that same construction given by the supreme court of Wisconsin to a statute of like import.

The writ should be denied.

BROOKE, J., concurred in result reached by McALVAY, J.